Estate of Frank T. Powers, Deceased, Frank T. Powers, Jr., et al., Executors, v. Commissioner. Augustin J. Powers v. Commissioner.
Estate of Powers v. Commissioner
Docket Nos. 39910 and 39911.
United States Tax Court
T.C. Memo 1954-239; 1954 Tax Ct. Memo LEXIS 5; 13 T.C.M. (CCH) 1189; T.C.M. (RIA) 54350; December 30, 1954, Filed *5 Daniel A. Taylor, Esq. * and Robert Lee Henry, Esq., for the petitioners. Joseph F. Lawless, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion MURDOCK, Judge: The Commissioner determined against each petitioner a deficiency of $22,395 in gift taxes for 1941 and a 25 per cent addition, amounting to $5,598.75, for delinquency in filing returns. There are three issues for decisions: (1) whether each petitioner made a gift of one-half instead of one-third of the stock of Powers Photo Engraving Company, (2) what was the value of the gifts, and (3) was the failure to file timely gift tax returns due to reasonable cause and not due to willful neglect. The petitioners have filed a stipulation of facts which the Court adopts as facts in the case. Frank T. Powers, John M. Powers, both now deceased, and Augustin J. Powers were brothers. They had been engaged for many years in the photo engraving business. Their principal company in 1941 was Powers Photo Engraving Company, a New York corporation, hereafter called New York. Its outstanding capital stock, consisting of 30 shares of $100 par common, was *6 owned equally by the three brothers in the early part of August 1941. John had no children. The other two brothers had four children each, several of whom had been employed in the business during vacations and after graduation from college had devoted full time to the business. The three brothers had been the officers of the corporation but they resigned on December 21, 1940, and on that same day Frank T. Powers, Jr., son of Frank, Sr., was elected president and Charles A. Powers, son of Augustin, was elected secretary and treasurer. Augustin, Jr. and Jack M. Powers, a son of Frank, were elected vice presidents. Augustin, Frank and John, the owners, were also elected vice presidents at that time. The younger generation took over the operation of the business. It had been the purpose of the three stockholders to turn over the ownership of the business to the eight children of Augustin and Frank. The condition of John's health, which had been poor for over a year, became much worse in August 1941 and he died on August 20, 1941. He transferred his one-third interest in the business to his two brothers, a few days before he died, with the understanding that they would transfer it equally *7 to their children. The stockholders of New York met on August 21, 1941, and authorized the officers to take the necessary steps to change the authorized stock from 30 shares having a par value of $100 per share into 500 new shares without nominal or par value. That change was made and 408 of the 500 shares were issued, 51 to each of the four children of Augustin and to each of the four children of Frank, on or about August 25, 1941. Neither Augustin nor Frank filed a timely gift tax return for 1941. Augustin filed a gift tax return for 1941 for the first time on February 23, 1949, and the first gift tax return for 1941 filed for Frank was filed by his estate on March 18, 1949. Both of those returns were filed with the collector of internal revenue for the third district of New York. Gifts to the donor's four children of 10 shares of the capital stock of New York were reported on each return. The value of the 10 shares at the date of the gift was reported on each return as $250,000, or $62,500 to each donee. Each donee likewise filed information returns at or about the same time showing the value at the date of gift as $62,500 for each 2 1/2 shares. Attached to Augustin's return *8 was an affidavit signed by him stating that he did not file a timely gift tax return reporting the gift of the 10 shares "for the reasons that he considered the said stock without any value, as the books of the corporation at that time showed and for many years prior thereto had shown a deficit and that in failing to file a gift tax return, he relied upon and followed the advice of competent counsel." He went on to state that he was finally filing a gift tax return because he understood that in the case of the estate of his brother, John, the value of his 10 shares had been fixed at $250,000 and "Although the affiant does not agree with the conclusion reached by the Bureau, he feels compelled to accept the value as so fixed for gift tax purposes and is therefore filing the attached gift tax return." Frank, Jr., as one of the executors of his father's estate, attached to the other return a somewhat similar affidavit stating, upon information and belief, that his father had failed to file a gift tax return for 1941 for the same reasons as stated by Augustin and giving as the reason for finally filing the return the same reason as that given by Augustin. The Commissioner, in determining *9 the deficiencies, held that each father made a taxable gift of 50 per cent of the stock, instead of 33 1/3 per cent, but he used the same basis of value as that used in the returns. He allowed exclusions of $16,000 each and a specific exemption of $40,000 to each. There is considerable confusion in the record as to various steps which were taken, some of which at least is undoubtedly due to the fact that none of the three brothers was able to testify, two being dead and the other being incapacitated because of age and illness. However, the evidence as a whole fairly preponderates in favor of the petitioners on the first point and justifies the finding which is hereby made that: The total gifts made by each father were limited to one-third interests in the business and the other one-third came to the donees from their uncle John indirectly through their fathers who had no personal right or interest in that one-third. The next question is to determine the value of the gifts. Here again the record leaves confusion and doubt. The petitioners place great reliance upon the opinion of a witness whom they called. He had had experience in valuing companies, and after being shown certain *10 balance sheets and earnings statements together with some other information, he stated that in his opinion the company in August 1941 had only a nominal value, which he placed at between $75,000 and $100,000, and a minority interest in its stock could not be sold and had no fair market value. His testimony has been carefully considered but it is clear that the information given him was inaccurate and incomplete in important particulars and was not the information which an interested party would have been able to obtain as a buyer or a seller in August 1941. He assumed from the information furnished him that the company at that time had a large deficit, whereas other evidence casts serious doubts upon the existence of such a deficit. The indications from other evidence, of which the witness was not informed, are that the company was always operated profitably and if there was any deficit it did not result from the operation of the business but was imposed upon the business because of outside unprofitable activities of the three brothers. The evidence also not only casts doubt upon the earning figures used by this witness but indicates that anyone interested in learning the truth about *11 the earnings as of August 1941 could have learned that they were substantially larger than the amounts given to and accepted by the witness. The so-called balance sheets given to and accepted by the witness for the purpose of his valuation do not reflect the book figures as of 1941 but were made up years after 1941 with some book figures and others chosen by an accountant. He put in, for example, a large reserve for taxes which was never on the books and for which no proper justification is shown by the records. It was known in 1941 that additional taxes might be determined, but the amount he used was the sum of tax liabilities asserted by representatives of the Commissioner after 1941 which had been settled at the time the balance sheet was made up for a much smaller amount than that put into the balance sheet. The record does not justify the belief that the figure inserted in the balance sheet would have been a reasonable one to have been adopted as a reserve for taxes in August 1941. The so-called balance sheet also contained other figures which were different from those which an interested buyer or seller would have used in 1941. The evidence justifies a serious doubt as to the *12 book value of the assets. They had been written down in 1941 and there is insufficient reason to believe that their book value was closely related to their true value.There is no evidence as to how the actual value of various assets compared with their book values as of 1941. There were no sales of the stock and the problem of valuing the stock is admittedly a difficult one. Nevertheless, this Court must arrive at some valuation based upon the evidence in this case, bearing in mind that the petitioners have the burden of proof. Augustin and the estate of Frank eventually reported their gifts at a total value of $250,000 each, although at the same time disclaiming that value. If the Commissioner had not concluded that each gave one-half instead of one-third, those values would have ended the matter. The evidence here justifies the conclusion that the total gifts of each were not worth $250,000 but it does not justify a lower value of the total gifts than $200,000 in each case. The Court has taken into account all of the evidence and has exercised its best judgment as a result of which it hereby makes this finding: The total value of the gifts made by each brother was $200,000. *13 The Commissioner has determined that the falure of these two brothers to file timely gift tax returns for 1941 was due to willful neglect and not due to reasonable cause and he has added 25 per cent to the tax for that reason. Here again the petitioners have the burden of proof. They argue that they relied upon the advice of a certified public accountant, and perhaps also upon the advice of an attorney, in believing that they did not have to file gift tax returns because the stock which they were giving was worthless. There are cases which hold that there is reasonable cause and no willful neglect where a person unfamiliar with some subject relies upon the advice of persons who might reasonably be expected to have the information which the taxpayer lacks. For example, if there is some complicated statutory tax problem involved, a lawyer or certified public accountant experienced in tax matters might be a safe person to consult and to trust. However, this is not such a case. The contention is that these brothers failed to file gift tax returns for 1941 because they thought the stock they were giving away to their children was worthless. The lawyer did not testify and there is no *14 evidence to show that he knew anything about the value of the gifts. The certified public accountant testified. He first came in contact with the company at some time in 1939. He was given the title of Comptroller on August 21, 1941, shortly after the gifts were made. The record does not show that his opinion in August 1941 of the value of the gifts was worth anything. The indications are that on the contrary it was worth very little. The two brothers had spent their lives in this business and apparently had made good livings out of it. They were far more familiar with its value than was this accountant recently called in for some special duties. The record as a whole leaves the very strong impression that the brothers did not believe they were giving their children a worthless business but were giving them something of great value which they had built up by their own efforts over a long period of years. They must have known that each was making gifts having a total value far in excess of the $56,000 exemptions and credits to which each would have been entitled. The following finding is made on this issue: The evidence fails to show that the late filing of the returns was due to *15 reasonable cause and not to willful neglect. Decisions will be entered under Rule 50. Footnotes
*. Withdrew as counsel on November 9, 1953.↩